## S11A1776. DAVIS v. THE STATE.
(725 SE2d 280)

HUNSTEIN, Chief Justice.

Dutch Davis was convicted of felony murder predicated on a drug transaction and attempted violation of the Georgia Controlled Substances Act ("VGCSA").[1] Davis's motion for new trial was denied, and he now appeals that decision.

1. Viewed in the light most favorable to the verdict, the evidence

---

[1] The crimes occurred on March 30, 2006. Davis was indicted in Fulton County on charges of malice murder, felony murder during the commission of aggravated assault, two counts of aggravated assault, possession of a firearm during the commission of a felony, attempted armed robbery, felony murder predicated upon a "marijuana drug transaction while in possession of a deadly weapon in a residential area," and attempted violation of the VGCSA. He was found guilty of felony murder predicated on the drug transaction and VGCSA and sentenced to life in prison plus five years. His motion for new trial, filed September 14, 2010, was denied April 11, 2011. The appeal was docketed for the September 2011 term in this Court and was submitted for decision on the briefs.

shows that Davis and his brother, Justin, went to a vacant apartment on Camp Creek Parkway on March 30, 2006 to buy marijuana from the victim, Lafe Dalton, and another man, Alan Simpson. Simpson testified that as Dalton was weighing the marijuana, Justin pulled a gun with the intent of robbing Dalton and Simpson. An altercation ensued, and Justin Davis shot Dalton. The Davis brothers fled after the shooting. Simpson called 911, but when the police arrived, Dalton was dead. Justin was convicted of felony murder predicated on the drug transaction and attempted VGCSA. His convictions were upheld by this Court. *Davis v. State*, 287 Ga. 173 (695 SE2d 251) (2010). The evidence in this case was sufficient for the jury to conclude beyond a reasonable doubt that Davis was guilty of felony murder. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. During the charge conference, Davis requested a special jury instruction that self-defense is a valid justification to felony murder based on *Heard v. State*, 261 Ga. 262 (3) (403 SE2d 438) (1991). Davis complains that the trial judge erred when it declined to give the requested instruction, but rather gave the pattern instruction, which stated in part that self-defense is inapplicable when the accused "[i]s attempting to commit [or] is committing . . . a felony." See OCGA § 16-3-21 (b) (2).[2]

In *Heard*, the trial court instructed the jury that self-defense is not a defense to felony murder. *Heard*, 261 Ga. at 262. This Court reversed, holding that a trial court may not prohibit a defendant from presenting a justification defense in a felony murder case where there is "sufficient evidence of a confrontation between the defendant and the victim, or other circumstances which ordinarily would support a charge on justification." Id. at 262-263. We reasoned that

---

[2] The entire charge delivered to the jury follows:

A person is justified in threatening or using force against another person when and to the extent that he . . . reasonably believes that such a threat or force is necessary to defend himself . . . against the other's imminent use of unlawful force. A person is justified in using force that is intended or likely to cause death or great bodily harm only if that person reasonably believes that such force is necessary to prevent death or great bodily injury to himself . . . or to prevent the commission of a forcible felony. The State has the burden of proving beyond a reasonable doubt that the defendant was not justified.

A person is not justified in using force if that person initially provokes the use of force against himself . . . with the intent to use such force as an excuse to inflict bodily harm upon the assailant or is attempting to commit, is committing or is fleeing after the commission or attempted commission of a felony or was the aggressor or was engaged in combat by agreement. . . .

In applying the law of self-defense, a defendant is justified to kill or use force against another person in defense of self or others. The standard is whether the circumstances were such that they would excite not merely the fears of the defendant but the fears of a reasonable person. . . .

the legislature did not intend to preclude the defense of justification in all felony murder cases. Id. at 262. For example, it would be "unfair and illogical to deny a defendant the defense of justification against a felony murder charge merely because of his *status* as a convicted felon in possession of a firearm" or because "he happened to have 1.1 ounces of marijuana in his pocket when he killed someone while trying to defend himself." Id. at 263, n. 3. Thus, the *Heard* decision clarified that self-defense is available as a defense to felony murder when authorized by the facts.

That is not the case here. Davis was not simply a status offender. Rather, he "made an affirmative choice to engage in a dangerous and potentially violent criminal activity" when he participated in the drug transaction. See *Smith v. State*, 290 Ga. 768, 771 (2) (723 SE2d 915) (2012). Therefore, the circumstances of this case are more analogous to a robber who kills someone while fleeing than they are to a status offender who kills someone in self-defense while he happens to possess 1.1 ounces of marijuana. Accordingly, the trial court was authorized to instruct the jury pursuant to OCGA § 16-3-21 (b) (2), which states in pertinent part that self-defense is inapplicable when the accused "[i]s attempting to commit [or] is committing . . . a felony." *Smith*, supra, 290 Ga. at 770.

3. Next, Davis claims that the trial court erred when it overruled the defense objection to the prosecutor's closing argument, in which she asserted that Davis's admission to the attempted VGCSA count meant that he was automatically guilty of felony murder. Specifically, Davis complains that the prosecutor misstated the law when she told the jury that "if you go on a marijuana drug deal and someone dies, you are responsible for their death."

It is well settled that counsel "is permitted wide latitude in closing argument, and any limitation of argument is a matter for the court's discretion." *Watkins v. State*, 278 Ga. 414, 415 (2) (603 SE2d 222) (2004) (Citation and punctuation omitted). Here, the trial court found that the prosecutor's comments were directed at the jury's deliberations and were not a statement of the law. Further, the trial court instructed the jury twice that closing arguments are not evidence and that the trial court itself would instruct the jury on the law that applied to the case. Additionally, two hours into its deliberations, the jury presented the following question to the trial court: "If defendant is found guilty of count 8 [VGCSA], does that automatically make him guilty of count 7 [felony murder]?" After consulting with counsel for both sides, the trial court responded, "the answer to that question is 'no'." Neither party objected to the trial court's answer to the jury's question.

Given the latitude allowed during closing argument, the trial court did not abuse its discretion in overruling Davis's objection to

the prosecution's closing argument. Even if it had been error to allow the prosecutor's comments during closing, the trial court's subsequent instructions and response to the jury's inquiry would render the error harmless.

4. Contrary to Davis's assertion, there was a sufficient nexus between the VGCSA and the victim's death to show that Davis's participation in the drug transaction was the proximate cause of Dalton's death. Proximate cause exists if Davis's felony

> directly and materially contributed to the happening of a subsequent accruing immediate cause of the death, or if . . . the homicide (was) committed within the res gestae of the felony . . . and is one of the incidental, probable consequences of the execution of the design to commit the [predicate felony].

*State v. Jackson*, 287 Ga. 646, 652 (2) (697 SE2d 757) (2010) (Citations and punctuation omitted). "The only limitation on the type of felony that may serve as an underlying felony for a felony murder conviction is that the felony must be inherently dangerous to human life." *Hulme v. State*, 273 Ga. 676, 678 (1) (544 SE2d 138) (2001). That is, the felony must be dangerous per se or by its circumstances create a foreseeable risk of death. Id.

Here, the marijuana transaction was the proximate cause of Dalton's death. It is undisputed that Davis contacted Dalton and requested a meeting to buy drugs. Allegations that the Davis brothers intended to rob Dalton and Simpson or that Dalton and Simpson planned to rob the Davis brothers are not dispositive. Regardless of whether an attempted robbery took place, the four men met for a drug transaction and something went wrong. It is undisputed that during the course of those events, Justin Davis shot and killed Dalton. Therefore, "the felony the defendants committed directly and materially contributed to the happening of a subsequent accruing immediate cause of the death." *Jackson*, supra, 287 Ga. at 652 (Citation and punctuation omitted).

Further, the requirement that the underlying offense must be foreseeably dangerous has been met. "In determining whether a felony [is inherently dangerous to human life], this Court does not consider the elements of the felony in the abstract, but instead considers the circumstances under which the felony was committed." *Hulme*, supra, 273 Ga. at 678 (Citation and punctuation omitted). Here, Davis arranged to purchase marijuana from Dalton. Some of the parties to the transaction arrived armed, which is not unusual in the drug trade. See *Jackson*, supra, 287 Ga. at 652 (defendants "planned an armed robbery of someone they believed to

be a drug dealer, who also turned out to be armed, an occurrence not unusual among drug dealers"). See also *Brint v. State*, 306 Ga. App. 10, 11-12 (1) (701 SE2d 507) (2010) (it is not unreasonable to anticipate that those involved in the drug trade might be armed, as "firearms are tools of the drug trade"); *Jones v. State*, 237 Ga. App. 847, 850 (2) (515 SE2d 841) (1999) (a reasonably prudent man would be justified in his belief that his safety was in danger when going to a known drug area). Whether or not the Davis brothers brought a weapon to the transaction is not determinative. Under the circumstances, the risk of death from this particular felony was reasonably foreseeable and the attempted armed robbery did not break the causal link between the drug deal and the killing.

5. Davis complains that the trial court did not properly instruct the jury regarding the connection between the predicate felony and the death of the victim and the requirement that the underlying felony be inherently dangerous. Davis did not contemporaneously object to either of the complained-of charges. Nevertheless, we are required to consider whether the court's jury instruction constitutes plain error since appellant properly enumerated and argued the issues on appeal. See *State v. Kelly*, 290 Ga. 29 (1) (718 SE2d 232) (2011). " '[T]he proper inquiry . . . is whether the instruction . . . was erroneous, whether it was obviously so, and whether it likely affected the outcome of the proceedings.' [Cit.]" Id. at 33 (2). We view the trial court's jury charges as a whole "to determine whether the jury was fully and fairly instructed on the law of the case." *Shivers v. State*, 286 Ga. 422, 423 (688 SE2d 622) (2010).

(a) The trial court properly instructed the jury regarding the necessary legal connection between the predicate felony and the death of the victim. The trial court gave the following instruction:

> In order for a homicide to have been done in the commission of this felony, there must be some connection between the felony and the homicide. The homicide must have been done in carrying out the unlawful act or acts and not collateral to it. It is not enough that the homicide occurred soon or presently after the felony was attempted or committed. There must be such a legal relationship between the homicide and the felony so as to cause you to find that the homicide occurred before the felony was at an end. The felony must have a legal relationship to the homicide, be at least concurrent with it in part and be a part of it in an actual or material sense.

The instruction is a correct statement of the law, and viewing the charge as a whole, we find that the jury was fully and fairly

instructed regarding the required nexus between the predicate offense and the victim's death. Since we find that the instruction was not erroneous, we need not reach the question of whether the instruction likely affected the outcome of the proceeding. *Kelly*, supra, 290 Ga. at 33.

(b) The trial court did not commit error when it did not specifically charge the jury with respect to the inherent dangerousness of the underlying felony. "A felony is inherently dangerous when it is dangerous per se or by its circumstances creates a foreseeable risk of death." *Shivers*, supra, 286 Ga. at 424 (Citation and punctuation omitted). The trial court was not required to give an instruction regarding foreseeable risk. In fact, "recent precedent from this Court clearly holds that a trial court's refusal to give an 'inherent dangerousness' instruction, even when it *was* requested, did not constitute error." *Kelly*, supra, 290 Ga. at 34 (citing *Shivers*, supra, 286 Ga. at 424). Given our clear precedent that an instruction on inherent dangerousness is not required, we determine that the trial court's omission of the charge here does not constitute plain error. Again, under *Kelly*, we need not reach the question of whether the omission affected the outcome of the proceedings. Id. at 33.

6. Finally, Davis asserts that his trial counsel gave ineffective assistance when he consented to the trial court's answer to the jury's questions regarding whether a conviction for the attempted VGCSA automatically required a conviction for the felony murder charge, failed to press the court to explain that if Justin was justified in shooting the victim that Davis could not be convicted of felony murder, and argued inconsistently during the charge conference as to whether self-defense applied in the felony murder context. These enumerations of error are without merit.

Georgia courts recognize a strong presumption that counsel's conduct falls within the broad range of reasonable professional conduct. *Robinson v. State*, 277 Ga. 75, 76 (586 SE2d 313) (2003). In order to overcome this presumption, Davis must establish not only that trial counsel's performance was deficient, but also that the deficiency so prejudiced the defense that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

All of Davis's complaints about his trial counsel relate to counsel's alleged failure to bring errors in the jury charges to the trial court's attention. As we have already determined that the complained-of jury charges were proper, and Davis's trial counsel's conduct fell well within the broad range of reasonable professional conduct, we hold that Davis's trial counsel was not ineffective. Thus, there is no reasonable likelihood of a different outcome had trial

counsel raised the arguments Davis asserts he should have raised.
*Judgment affirmed. All the Justices concur.*

NAHMIAS, Justice, concurring.

I write elsewhere today to express my doubts about the validity of this Court's decision in *Heard v. State*, 261 Ga. 262, 262-263 (403 SE2d 438) (1991), which disregarded the plain language of OCGA § 16-3-21 (b) (2) and overruled prior precedent. See *Smith v. State*, 290 Ga. 768, 775 (723 SE2d 915) (2012) (Nahmias, J., concurring). As in *Smith*, however, the State has not asked us to reconsider *Heard* in this case, and the majority opinion applies *Heard*'s holding correctly in Division 2. I therefore concur in full in the majority opinion.

I am authorized to state that Presiding Justice Carley and Justice Hines join in this concurrence.

DECIDED MARCH 23, 2012.

*James C. Bonner, Jr., Sheueli C. Wang, for appellant.*
*Paul L. Howard, Jr., District Attorney, Elizabeth A. Baker, Paige Reese Whitaker, Christopher M. Quinn, Assistant District Attorneys, Samuel S. Olens, Attorney General, Mary Beth Westmoreland, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Dana E. Weinberger, Assistant Attorney General, for appellee.*