**FOURTH DIVISION**
**DOYLE, P. J.,**
**ANDREWS and BOGGS, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**June 20, 2012**

# In the Court of Appeals of Georgia

A12A0739. KIRKLAND v. THE STATE.                    DO-028 C

DOYLE, Presiding Judge.

Following a stipulated bench trial, Averil Lydell Kirkland appeals from his conviction of possession of marijuana with intent to distribute, contending that the trial court erred by denying his motion to suppress. For the reasons that follow, we affirm.

Construed in favor of the verdict,[1] the evidence shows that a police officer on patrol encountered Kirkland sitting in a parked car, which was backed into a private residence. The officer was aware of an armed robbery one quarter mile away approximately 45 minutes prior to his encounter with Kirkland, whom the officer observed to be an African-American male wearing a black stocking cap and dark

_____

[1] See *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998).

hooded sweatshirt – features matching those of the suspect in the armed robbery. The suspect also was described as carrying a Glock-style handgun. Based on the similarity of the suspect's description, the officer stopped his marked cruiser and approached Kirkland, who was talking on a cell phone in his car.

The officer asked Kirkland to hang up the phone so he could talk to him and requested that Kirkland step out of the vehicle. Kirkland complied, and the officer explained that he was looking for an armed robbery suspect. Kirkland denied any involvement in the robbery and complied with the officer's request to see his identification. The officer asked Kirkland for consent to perform a pat-down search, explaining that the suspect was armed, and Kirkland gave his consent.

Upon patting down Kirkland, the officer immediately felt what he believed, based on his training and experience, to be a bag of marijuana in Kirkland's front pants pocket and asked Kirkland what it was. Kirkland replied, "a bag," and the officer asked if he could see the bag, and Kirkland replied, "yes." The officer retrieved the bag from Kirkland's pocket and recognized it as containing marijuana. The officer placed Kirkland under arrest for possession of marijuana. After securing Kirkland, the officer searched Kirkland's vehicle incident to the arrest and discovered a bag of clear plastic sandwich bags, a second bag of marijuana, multiple small plastic

2

"jewelry bags," and some digital scales. After being read his *Miranda*[2] warnings, Kirkland claimed ownership of the bags of marijuana, but he stated that the scales and plastic bags belonged to an unnamed friend. The officer transported Kirkland to the police station, where he determined the marijuana to weigh 1.88 ounces, including the bags.

Kirkland was charged with possession of marijuana with intent to distribute and prior to trial he moved to suppress the evidence found during the search of his person and vehicle. Following an evidentiary hearing, the trial court denied the motion, and Kirkland stipulated to the evidence adduced at the hearing, maintaining his objection to the admissibility of the evidence. The trial court overruled the objection, found Kirkland guilty, and sentenced him to ten years. This appeal followed.

Kirkland argues that the trial court erred by denying his motion to suppress because the officer's actions were unlawful at each stage: the initial encounter, the

---

[2] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

pat-down search, and the search of his vehicle. Our review of these questions is de novo in this case,[3] and as explained below, each ground fails.

> [The case law delineates] three tiers of police-citizen encounters: (1) communication between police and citizens involving no coercion or detention and therefore without the compass of the Fourth Amendment, (2) brief seizures that must be supported by reasonable suspicion, and (3) full-scale arrests that must be supported by probable cause. In the first tier, police officers may approach citizens, ask for identification, and freely question the citizen without any basis or belief that the citizen is involved in criminal activity, as long as the officers do not detain the citizen or create the impression that the citizen may not leave. The second tier occurs when the officer actually conducts a brief investigative *Terry*[4] stop of the citizen. In this level, a police officer, even in the absence of probable cause, may stop persons and detain them briefly, when the officer has a particularized and objective basis for suspecting the persons are involved in criminal activity. A Fourth Amendment seizure only occurs when, in view of all the circumstances

---

[3] See *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994) (if "the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, the trial court's application of the law to undisputed facts is subject to de novo appellate review").

[4] *Terry v. Ohio*, 392 U. S. 1 (88 SC, 20 LE2d 889) (1968).

surrounding the incident, a reasonable person believes that he is not free to leave.[5]

Here, the encounter began when the officer observed Kirkland sitting in a parked car, and the officer pulled over and approached Kirkland to speak to him about the recent robbery.

> It is well established that an officer's approach to a stopped vehicle and inquiry into the situation is not a "stop" or "seizure" but rather clearly falls within the realm of the first type of police-citizen encounter. . . . Even when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual; ask to examine the individual's identification; and request consent to search – as long as the police do not convey a message that compliance with their requests is required.[6]

Because Kirkland was already stopped and the officer did not block Kirkland's vehicle, activate his blue lights, or otherwise indicate that Kirkland was unable to leave, the initial encounter was a first-tier encounter requiring no suspicion. "Police officers may approach a citizen, ask for identification, ask him to roll down a window

---

[5] (Citations and punctuation omitted.) *Akins v. State*, 266 Ga. App. 214, 215 (596 SE2d 719) (2004).

[6] (Citation and punctuation omitted.) *Stokes v. State*, 238 Ga. App. 230, 232 (518 SE2d 447) (1999).

or step out of a car, and freely question him without any articulable suspicion, as long as the officers do not detain the citizen or create the impression that the citizen may not leave."[7]

Likewise, the subsequent pat-down was proper because it was performed pursuant to Kirkland's consent, which the evidence shows he freely gave when requested by the officer.[8]

> A valid consent eliminates the need for either probable cause or a search warrant. Moreover, once a voluntary consent is legally obtained, it continues until it either is revoked or withdrawn. The burden of proving the validity of a consensual search is upon the State. To meet its burden, the State must show that the consent was voluntarily given and was not merely acquiescence to a claim of lawful authority.[9]

The evidence showed that the officer merely requested a pat-down search of Kirkland as they conversed outside of Kirkland's vehicle. Kirkland gave his consent, so the officer was authorized to execute the search regardless of any suspicion. Upon

---

[7] (Punctuation omitted.) *Mauge v. State*, 279 Ga. App. 36, 38 (630 SE2d 174) (2006)

[8] See *Gary v. State*, 244 Ga. App. 535, 537 (2) (536 SE2d 192) (2000).

[9] (Citations and punctuation omitted.) *Brint v. State*, 306 Ga. App. 10, 12-13 (2) (701 SE2d 507) (2010).

feeling the bag in Kirkland's pocket, the officer again sought consent to remove it, which Kirkland also freely gave. Thus, the officer's discovery and retrieval of the marijuana in Kirkland's pocket was not the result of an unauthorized detention or seizure.[10] And having discovered the bag of suspected marijuana in Kirkland's pocket, the officer was authorized to place him under arrest and detain him.[11]

Finally, the officer's search of Kirkland's vehicle incident to the arrest was lawful under the circumstances. In *Arizona v. Gant*,[12] the United States Supreme Court held that "circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle."[13] The crime of arrest in this case was the possession of bagged marijuana in Kirkland's pocket, and it was reasonable to believe

---

[10] See *Ware v. State*, 309 Ga. App. 426, 429 (710 SE2d 627) (2011); *Brint*, 306 Ga. App. at 13 (2).

[11] See *Ross v. State*, 255 Ga. App. 462, 464 (566 SE2d 47) (2002) ("An officer may make a warrantless arrest and search if, at the time of the arrest, he has probable cause to believe the accused has committed or is committing an offense.").

[12] 556 U. S. 332 (129 SC 1710, 173 LE2d 485) (2009).

[13] (Punctuation omitted.) Id. at 343 (III).

7

that evidence relevant to this offense might be found in the vehicle from which

Kirkland exited.[14]

*Judgment affirmed. Andrews and Boggs, JJ., concur.*

---

[14] See id. at 344 (III) (noting *New York v. Belton*, 453 U. S. 454 (101 SC 2860, 69 LE2d 768) (1981) and *Thornton v. United States*, 541 U. S. 615 (124 SC 2127, 158 LE2d 905) (2004) as examples of drug offense cases in which the offense of arrest supplied a basis for a vehicle search incident to the arrest).