313 Ga. 841
FINAL COPY

S22A0171. JORDAN v. THE STATE.

COLVIN, Justice.

Orlando Jordan appeals his conviction for malice murder arising out of the 2014 shooting death of Antoniyo Wiggins.[1] On appeal, Jordan claims that the evidence was insufficient to support his conviction and that the trial court improperly admitted certain evidence at trial. For the reasons that follow, we affirm.

1. Jordan alleges that the evidence presented at trial was

---

[1] The crime occurred on March 22, 2014. On September 20, 2019, a Fulton County grand jury indicted Jordan on charges of malice murder (Count 1), felony murder predicated on aggravated assault with a deadly weapon (Count 2), and two counts of felony murder predicated on possession of a firearm by a convicted felon (Counts 3 and 4). At a jury trial held from February 18 to 25, 2020, the jury found Jordan guilty of all four counts. The trial court sentenced Jordan to serve a life sentence in prison without the possibility of parole for Count 1, and the remaining counts were vacated by operation of law. See *Malcolm v. State*, 263 Ga. 369, 372-373 (5) (434 SE2d 479) (1993). On February 27, 2020, Jordan filed a motion for new trial, which he amended on September 4, October 26, and November 6, 2020. The trial court conducted a hearing on the amended motion for new trial on November 10, 2020. The trial court denied Jordan's motion for new trial on August 25, 2021. The case was docketed to this Court's term beginning in December 2021 and submitted for a decision on the briefs.

constitutionally insufficient to support his conviction for malice murder. When evaluating the sufficiency of the evidence as a matter of constitutional due process, the proper standard of review is whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979). This Court views the evidence in the "light most favorable to the verdict, with deference to the jury's assessment of the weight and credibility of the evidence." *Hayes v. State*, 292 Ga. 506, 506 (739 SE2d 313) (2013) (citation and punctuation omitted). The jury's resolution of these issues "adversely to the defendant does not render the evidence insufficient." *Graham v. State*, 301 Ga. 675, 677 (1) (804 SE2d 113) (2017) (citation and punctuation omitted).

Viewed in this light, the evidence presented at trial showed that, at all relevant times, Jordan and Wiggins lived in neighboring apartments in the same complex in Atlanta. Wiggins shared an apartment with his wife; his sister, Angela; and Mario Jones, Angela's boyfriend. Jones and Jordan were friendly and spent time

together working on Jordan's car and dirt bikes. In February or March 2014, Wiggins expressed an interest in one of Jordan's dirt bikes and, shortly thereafter, one of Jordan's dirt bikes was stolen by a prospective buyer during a test drive.

On the morning of March 22, 2014, Wiggins got into a fight with Jones, which led to the police being called to the residence. Jones and Angela left before the police arrived and walked to Jordan's apartment. The police responded to the domestic dispute call and spoke with Wiggins, after which Wiggins left the apartment complex on foot between 6:30 and 7:00 a.m., heading in the direction of Martin Luther King, Jr. Drive. Jordan, Jones, and Angela all left Jordan's apartment. Jones and Angela returned to Wiggins' apartment, and Jordan got into his car and drove out of the complex.

At approximately 7:00 a.m., a sheriff's deputy stopped at a traffic light near 2950 Martin Luther King, Jr. Drive and heard gunshots coming from the nearby railroad tracks. The deputy saw muzzle flashes through the bushes. He then saw Wiggins run across the road and fall to the ground as more shots were fired. The deputy

3

approached Wiggins and could not find a pulse. There was a 7.62-caliber shell casing near Wiggins' body and additional shell casings on a dirt path near the railroad tracks. In all, the police collected 24 7.62-caliber shell casings, nine of which were Wolf brand casings. The recovered shell casings and projectiles were sent to the Georgia Bureau of Investigation for analysis. A firearms expert determined that all 24 bullets were fired from either an SKS or AK-47 rifle and that all bullets were fired from the same weapon. An autopsy revealed that Wiggins died after sustaining 15 gunshot wounds. The forensic pathologist opined at trial that Wiggins' wounds were caused by a high-velocity rifle.

While investigating the crime scene, police located a 1999 Mitsubishi Diamante parked in the lot of a nearby apartment complex. Despite the cold weather, the car was still warm to the touch. The car had a "for sale" sign in the window that identified the owner as "Orlando" and provided a phone number that was later traced to Jordan. The police later confirmed that the car was registered to Jordan. A witness told police that she observed two

4

men exit the Mitsubishi after parking it that morning. One of the men carried a rifle as he headed toward the railroad tracks. The witness heard approximately 25 gunshots and then saw one man run back to the car with "a big, long gun," which he threw under the parked car before running from the scene. Three witnesses testified that they had seen Jordan with a large gun in his possession prior to the murder, and one witness specifically identified the weapon as an AK-47. The murder weapon was not recovered, and Jones testified that, on the day after the murder, Jordan came to see him while holding a long gun and bragged "they didn't get my gun."

Police obtained a video surveillance recording from Jordan's apartment complex showing his car driving out of the complex shortly before the murder. A video surveillance recording from the apartment complex near the murder also showed Jordan's car entering the apartment's parking lot at 6:48 a.m., about ten minutes before the shooting. Cell phone records showed that Jordan's phone was in close proximity to the crime scene at the time of the shooting.

After the shooting, Jordan showed up at a friend's house and

5

appeared panicked. Jordan admitted to the friend that he had just confronted and shot a man near the railroad tracks along Martin Luther King, Jr. Drive because he believed the man had stolen a dirt bike from him. Jordan then asked his friend to temporarily hide a "large gun" for him in her home, which Jordan returned later that day to retrieve.

Finally, the State presented evidence that, four months prior to the murder, a police officer's apartment was burglarized wherein the intruders stole an AK-47 and multiple containers of ammunition, including nine Wolf brand 7.62-caliber cartridges. The parties further stipulated that Jordan was a convicted felon at the time of Wiggins' murder.

Jordan argues that the evidence was insufficient as a matter of law because the State presented no direct or circumstantial evidence of his involvement in the murder and, thus, failed to prove his guilt beyond a reasonable doubt. We disagree. When viewed in the light most favorable to the verdict, the evidence presented at trial, particularly the evidence that Wiggins was shot 15 times while

6

running away, was sufficient as a matter of constitutional due process to authorize a rational jury to find Jordan guilty beyond a reasonable doubt of the malice murder of Wiggins. See OCGA § 16-5-1 (a) (defining "malice murder"); *Watkins v. State*, 278 Ga. 414, 414 (1) (603 SE2d 222) (2004) (concluding there was sufficient evidence to support a malice murder conviction where the victim was killed by multiple gunshot wounds while running away).[2]

2. Jordan argues that the trial court abused its discretion by admitting testimony regarding the dirt bike stolen from Jordan prior to the murder, and testimony and physical evidence related to the burglary of the police officer's apartment that occurred prior to the shooting. "Decisions regarding [the relevance of evidence] are committed to the sound discretion of the trial court." *Smith v. State*, 299 Ga. 424, 429 (2) (b) (788 SE2d 433) (2016). Evidence is relevant

---

[2] Jordan also argues that the trial court abused its discretion when it declined to grant a new trial pursuant to the general grounds set forth in OCGA §§ 5-5-20 and 5-5-21. "However, our review of a trial court's denial on the general grounds is limited to review of the sufficiency of the evidence under *Jackson*." *Poole v. State*, 312 Ga. 515, 520 n.3 (863 SE2d 93) (2021). For the reasons discussed above, the evidence was sufficient to support Jordan's conviction.

7

if it "[has] any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." OCGA § 24-4-401. "The standard for relevant evidence is a liberal one, and such evidence is generally admissible even if it has only slight probative value." *McClain v. State*, 303 Ga. 6, 10 (3) (810 SE2d 77) (2018) (punctuation omitted). "Relevant evidence still may be excluded if 'its probative value is substantially outweighed by the danger of unfair prejudice.'" Id. (quoting OCGA § 24-4-403 ("Rule 403")). A "trial court's discretion to exclude evidence under Rule 403 is an extraordinary remedy which should be used only sparingly," because the "major function of Rule 403 is to exclude matter[s] of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." *Hood v. State*, 299 Ga. 95, 102-103 (4) (786 SE2d 648) (2016) (citations and punctuation omitted). With these principles in mind, we review Jordan's claims.

(a) *The dirt bike testimony.*

During the State's case-in-chief, the prosecutor elicited

8

testimony from four separate witnesses whose combined testimony established that, prior to the murder, Jordan owned multiple dirt bikes, Wiggins had expressed an interest in purchasing one of the dirt bikes, and one of Jordan's dirt bikes was stolen by a prospective buyer during a test drive. Jordan objected to the testimony of these witnesses, alleging that the theft of one of his dirt bikes was irrelevant. The trial court found this testimony was relevant and admissible because it tended to show Jordan's motive for the shooting. Jordan alleges that this was error.

"Though motive is not an essential element of any offense, evidence of motive is generally relevant in murder prosecutions." *Calhoun v. State*, 308 Ga. 146, 153 (2) (c) (iii) (839 SE2d 612) (2020). Here, Jordan's potential motive for shooting Wiggins was relevant and particularly probative, given that only a matter of weeks had passed between the bike being stolen and Wiggins' murder, and the evidence that Jordan admitted shooting someone he believed had stolen one of his dirt bikes. Based on the foregoing, the probative value of the evidence was not substantially outweighed by any

9

alleged unfair prejudice. Therefore, the trial court did not abuse its discretion in admitting this testimony at trial.[3]

(b) *The burglary evidence.*

Before trial, Jordan filed a motion in limine seeking to exclude evidence, namely a rifle and shell casings stolen from a police officer's apartment, which, the State alleged, were used in Wiggins' murder. Jordan argued, in part,[4] that the evidence should be excluded on relevance grounds. The State proffered evidence that the AK-47 and ammunition stolen from Officer Jerome Jones' apartment were relevant because Jordan had been seen in possession of an AK-47 prior to the murder and an AK-47 was the possible murder weapon in this case. Additionally, the stolen ammunition had ballistic similarities to the shell casings recovered from the crime scene. The court found that the evidence was

---

[3] In his brief, in addition to making the relevance and Rule 403 arguments discussed above, Jordan cites to OCGA § 24-4-404, but does not make any legal or factual argument in support of this citation.

[4] As with the previous enumeration, in his brief, Jordan also cites to OCGA § 24-4-404 but does not make any legal or factual argument in support of this citation. Jordan also raised a discovery issue in his motion in limine, but that issue is not raised on appeal.

10

relevant and denied the motion.

At trial, Officer Jones testified that an AK-47 and multiple cans of 7.62-caliber ammunition were stolen during a burglary of his apartment on November 14, 2013. Officer Jones also testified that Ralph Williams, Jordan's known associate, was Officer Jones' neighbor at the time his apartment was burglarized. The State also called Detective Kevin Leonpacher, who testified that he compared the 24 7.62-caliber shell casings from the crime scene with the 7.62-caliber ammunition stolen from Officer Jones' apartment, and that nine of the casings found were the same brand (Wolf) as those stolen in the burglary. Nine 7.62-caliber Wolf cartridges were missing from an ammunition box that was opened during the burglary of Officer Jones' apartment. The State introduced five photographs of the empty boxes of ammunition from the burglary at trial, and Jordan objected to the photographs as hearsay and renewed his relevance and prejudice objections. The trial court overruled both objections, which Jordan alleges was error. We disagree.

Regarding the hearsay objection, hearsay "means a statement,

other than one made by the declarant while testifying at the trial . . . offered in evidence to prove the truth of the matter asserted." OCGA § 24-8-801 (c).  For hearsay purposes, a "statement" is either an "oral or written assertion[ ] or . . . [n]onverbal conduct of a person."  OCGA § 24-8-801 (a).  The admission of the physical evidence here did not fit the definition of hearsay.

Further, the introduction of the burglary evidence was relevant and probative. The weapon and ammunition were stolen just four months prior to the murder, they were the same caliber used in Wiggins' murder, the exact number of Wolf brand cartridges stolen were found at the murder scene, and Jordan's known associate lived next door to where the burglary occurred.  Because the evidence provided a connection between the items stolen during the burglary with the potential murder weapon, and the probative value of that evidence was not substantially outweighed by any unfair prejudicial effect, the trial court did not abuse its discretion in admitting this evidence at trial.

*Judgment affirmed.  All the Justices concur.*

Decided June 1, 2022.

Murder. Fulton Superior Court. Before Judge Ellerbe.

*Kenneth W. Sheppard*, for appellant.

*Fani T. Willis, District Attorney, Lyndsey H. Rudder, Ruth M. Pawlak, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Michael A. Oldham, Assistant Attorney General*, for appellee.